IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 16-cv-02796-NYW

SHERMAN & HOWARD L.L.C.,

    Plaintiff,

v.

PEPPERS & ROGERS GROUP B.V., and
AMINE JABALI,

    Defendants.

## ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT

Before the Court is Defendant Amine Jabali's ("Mr. Jabali") Motion to Enforce Settlement Agreement and Disburse Funds from Court Registry (the "Motion" or "Motion to Enforce"). [Doc. 50, filed April 16, 2024]. Defendant Peppers & Rogers Group B.V. ("PRG") has filed a response, [Doc. 55], and Mr. Jabali has replied, [Doc. 58]. The Court concludes that oral argument would not materially assist in the resolution of the Motion. Upon review of the Motion and the related briefing, the entire docket, and the applicable case law, the Motion to Enforce is respectfully **DENIED**.

## BACKGROUND

The following facts are drawn from the docket and are undisputed unless otherwise noted. This dispute arises from an underlying interpleader action filed on November 16, 2016 by Plaintiff Sherman & Howard L.L.C. ("Plaintiff") pursuant to Fed. R. Civ. P. 22. *See generally* [Doc. 1]. Plaintiff sought to determine the proper distribution of $175,000 (the "Escrow Amount"), along with related documents, that it held as an escrow agent for

Defendants. [*Id.*]. The Escrow Amount represents the purchase price Mr. Jabali paid PRG for an interest in Peppers & Rogers Group Gulf, Management, Industrial and Marketing Consulting Services L.L.C. ("PRG Gulf"). *See* [Doc. 1-1 at 2]. Mr. Jabali and PRG never completed the stock purchase and dispute whether Mr. Jabali breached the underlying stock purchase agreement. *See* [Doc. 50 at 1–2; Doc. 55 at 1–2]. When Mr. Jabali and PRG gave Plaintiff conflicting instructions as to the Escrow Amount, Plaintiff initiated this action. *See* [Doc. 1 at ¶ 2]. This Court granted Plaintiff's request to deposit the Escrow Amount into the court's Registry, *see* [Doc. 27], and dismissed Plaintiff from the case on April 3, 2017, [Doc. 31]. The remaining Parties, Mr. Jabali and PRG, were not realigned at that time.

On May 8, 2017, Mr. Jabali and PRG entered a Settlement Agreement to resolve their dispute over the Escrow Amount. *See generally* [Doc. 42]. Pursuant to the Settlement Agreement, Mr. Jabali would receive the Escrow Amount upon the dissolution of PRG Gulf. *See* [*id.* at ¶ 3.1.6]. To complete dissolution and receive the Escrow Amount, Mr. Jabali needed to obtain a "Certificate of Dissolution for PRG Gulf issued by the Kuwaiti Ministry of Commerce" and a "tax clearance certificate for PRG by the Kuwaiti tax authority." [*Id.*]. The Settlement Agreement also required Mr. Jabali with preparing "Audited Financials" and other "Dissolution Papers" required by the Kuwaiti Ministry of Commerce ("KMOC"). [*Id.* at ¶¶ 2.5, 3.1.2]. Conversely, "PRG's only obligations in this regard are solely to execute the Dissolution Papers and reasonably cooperate with [Mr.] Jabali to the minimum extent necessary in the preparation of the Dissolution Papers." [*Id.* at ¶ 3.1.2]. If the Parties did not accomplish the dissolution of PRG Gulf by December 31, 2017, the Settlement Agreement contemplated that "either party shall have the option

of reviving the Interpleader Action to active status with the Court, and all releases and agreements below become null and void." [*Id.* at ¶ 3.1.1]. At the Parties' request, the Court administratively closed the case pending completion of the terms of the Settlement Agreement. *See* [Doc. 39]. The Parties, however, did not accomplish the dissolution of PRG Gulf by the original December 31, 2017 deadline.

In his Motion to Enforce, Mr. Jabali describes various delays that were allegedly outside of his control. First, the KMOC required certain Dissolution Papers to be signed by PRG through a local counsel with a Power of Attorney. [Doc. 50 at ¶¶ 21–25]. But because PRG did not obtain local counsel until 2018, the KMOC now required an additional audit report for PRG Gulf for 2017. [*Id.* at ¶ 26; Doc. 55 at ¶¶ 5–6]. The KMOC then rejected the application for dissolution because PRG Gulf had outstanding debts. *See* [Doc. 50 at ¶ 31]. Mr. Jabali alleges that PRG agreed to extend the Settlement Agreement deadline to December 31, 2018, which PRG denies. [*Id.* at ¶ 33; Doc. 55 at ¶ 15]. Mr. Jabali asserts that "two new obstacles had arisen" at that point to "hinder" his obtaining of the requisite Dissolution Papers. [Doc. 50 at ¶ 34]. For one, PRG Gulf's years without business activity prevented it from filing tax returns, which in turn prevented the Kuwaiti taxing authority from inspecting PRG Gulf and issuing a "formal tax declaration to the Kuwaiti authorities." [*Id.*]. Additionally, the KMOC began requiring a slower "formal liquidation process" instead of the shareholder resolution dissolution process that Mr. Jabali had previously been pursuing. [*Id.*].

These obstacles delayed the process into 2019, which required the parties to prepare a new year of audit reports for the KMOC. [*Id.* at ¶¶ 35–38]. Mr. Jabali and PRG each accuse the other of causing additional delays throughout the process. *See, e.g.*,

3

[*id.* at ¶ 40; Doc. 55 at ¶¶ 3, 11, 15–20]. In particular, PRG asserts that Mr. Jabali breached the Settlement Agreement in July 2017 when he waited nearly 50 days to present Dissolution Papers to the KMOC, even though the Settlement Agreement requires him to do so within five days. *See* [Doc. 55 at ¶ 3, Doc. 42 at ¶ 3.1.4]. Mr. Jabali asserts that PRG "ceased providing substantive responses" in January 2020. [Doc. 50 at ¶ 39]. PRG agrees that, at that point, it "was not interested in further extending the process." [Doc. 55 at ¶ 20].

Now, nearly seven years after the Settlement Agreement's original deadline, Mr. Jabali asserts that he has fulfilled his obligations under the Settlement Agreement. *See generally* [Doc. 50]. Mr. Jabali contends that the KMOC suspended PRG Gulf's business license after its expiration in February 2019. *See* [Doc. 50-21]. Mr. Jabali asserts that the suspension "effectively . . . terminated" PRG Gulf, which he argues is tantamount to dissolution. [Doc. 50 at ¶ 42]. Moreover, the passage of time has apparently allowed the Kuwaiti statute of limitations for tax claims to run. [*Id.* at ¶ 43]; *see also* [Doc. 50-22 at 3]. Mr. Jabali contends that this gives PRG Gulf the clearance from tax liability contemplated in the Settlement Agreement. [Doc. 50 at ¶ 44]. And because PRG Gulf is now "effectively" dissolved and cleared from tax liability, Mr. Jabali asserts that he is entitled to disbursement of the Escrow Amount. [*Id.* at ¶ 45]. PRG counters that it is "undisputed" that Mr. Jabali failed to deliver the required Certificate of Dissolution and tax clearance certificate for PRG Gulf, and instead asks the Court to disburse the Escrow Amount to PRG Gulf. [Doc. 55 at 2, 15]. The Court addresses the Parties' arguments below.

## LEGAL STANDARD

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quotation omitted).  A settlement agreement is a contract to end judicial proceedings, so issues involving the formation and construction of a purported settlement agreement are generally resolved by applying state contract law. *See United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).  Federal courts apply state law to a settlement agreement even when there are federal causes of action in the underlying litigation.  *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001) (citation omitted).  The Court therefore applies Colorado contract law to the Settlement Agreement, in accordance with these rules and the Settlement Agreement's choice of law provision.[1]  *See* [Doc. 42 at ¶ 4.11].

## ANALYSIS

### I.   Substantial Performance

Although Mr. Jabali does not use the term "substantial performance" in the Motion, the Response and Reply appear to agree that the doctrine of substantial performance governs the question of whether Mr. Jabali has satisfied the Settlement Agreement.  *See* [Doc. 55 at 11–12; Doc. 58 at 7].  In other words, the inquiry is whether Mr. Jabali has substantially delivered the required dissolution and tax clearance certificates by

---

[1] In addition, both Parties invoke Colorado law.  *See* [Doc. 50 at 13; Doc. 55 at 12].  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

respectively (1) allowing the KMOC to suspend PRG Gulf's business license, and (2) waiting for Kuwait's tax liability limitations period to run with respect to PRG Gulf.[2]

A party has substantially performed its contractual obligations when the other party has received substantially the benefit of their bargain. *Stan Clauson Assocs. v. Coleman Bros. Const., LLC*, 297 P.3d 1042, 1045 (Colo. App. 2013). Thus, substantial performance occurs when "the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance . . . ." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc) (quotation omitted). A failure to substantially perform constitutes material breach of the contract. *Stan Clauson*, 297 F.3d at 1045 (citing *W. Distrib. Co.*, 841 P.2d at 1058). The determination of whether a contractual term is material must be made "in context and in light of the expectations of the parties at the time the original contract was formed." *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1229 (Colo. App. 2000) (citation omitted).

### A.   Certificate of Dissolution

Mr. Jabali concedes that he is unable "to provide the specific dissolution certificate and tax clearance certificate for PRG Gulf." [Doc. 58 at 7]. Instead, he argues that KMOC's suspension of PRG Gulf's business license amounts to substantial performance because the suspension "effectively dissolv[ed] the PRG Gulf entity." [Doc. 50 at 14–15].

---

[2] To the extent that these questions require determinations of Kuwaiti law, Federal Rule of Civil Procedure 44.1 permits the Court to consider the documents submitted by the Parties, including a relevant statutory provision and a declaration by a Kuwaiti law expert. *See* [Doc. 50-21; Doc. 55-9]; *see also HFGL Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc.*, 264 F.R.D. 146, 148 (D.N.J. 2009) ("Under [Rule 44.1], the Court may rely on its own research and any submissions from the parties when considering foreign law." (quotation omitted)).

6

He reads the Settlement Agreement provision stating that "PRG Gulf may file a Request for Company Amendment with the [KMOC] to cancel its license, and dissolve the company," [Doc. 42 at ¶ 2.5], to mean that cancellation of the license is equivalent to dissolution, [Doc. 50 at 13–14].  Mr. Jabali concludes that PRG now substantially enjoys the benefit "anticipated by the Settlement Agreement," which he identifies as "PRG Gulf ceasing to do business."  [Doc. 58 at 7].

PRG counters that the "administrative suspension" of PRG Gulf's license "is not the functional or practical equivalent of a formal dissolution of [the] company."  [Doc. 55 at 12].  Aside from the legal difference between suspension and dissolution, PRG argues that formal dissolution provides the benefit of protecting the corporation from creditor claims.  [*Id.* at 13].  Mr. Jabali replies that PRG Gulf needs no protection from creditor claims because he paid off all of PRG Gulf's debts in 2018.  *See* [Doc. 58 at 8; Doc. 50-16 at 1].

Regardless of the state of PRG Gulf's balance sheet, the difference between a license suspension and formal dissolution is sufficiently material to prevent Mr. Jabali from demonstrating substantial performance.  The extensive description of the dissolution process contained in the Settlement Agreement, *see, e.g.*, [Doc. 42 at ¶¶ 1.5, 2.5, 3.1.2], suggests that the parties intended to formally dissolve PRG Gulf, not merely to ensure that it "ceas[es] to do business," *see* [Doc. 58 at 7].  As Mr. Jabali acknowledges, "dissolution" means "the termination of a corporation's legal existence."  [Doc. 50 at 14 (quoting *Dissolution*, Black's Law Dictionary (7th ed. 2001))].  PRG contracted for the legal termination of PRG Gulf, and both common sense and the expert declaration

7

submitted by PRG suggest that a license suspension does not substantially provide PRG the benefit of its bargain.

First, a plain reading of the Settlement Agreement demonstrates that PRG Gulf's filing of a "Request for Company Amendment" has the effect of both "cancel[ing] its license, *and* dissolv[ing] the company." [Doc. 42 at ¶ 2.5 (emphasis added)]. That is, cancellation of the license is just one of the final steps in the lengthy dissolution process anticipated by the Settlement Agreement. *See* [*id.* at ¶¶ 1.5, 2.5, 3.1.2]. No provision of the Settlement Agreement indicates that a license cancellation, let alone a suspension, is substantially the same as formal dissolution. The Declaration of Ahmed Barakat ("Mr. Barakat"), a "legal consultant practicing law in Kuwait," supports this conclusion. *See* [Doc. 55-9 at ¶ 2]. Mr. Barakat states that a license suspension (1) can occur for "a number of reasons" unrelated to formal dissolution, [*id.* at ¶ 5]; (2) did not effectively terminate PRG Gulf, which "remains registered as a company at the [Kuwaiti] Ministry of Commerce and Industry," [*id.*]; and (3) unlike dissolution, "provides no protection from a creditor's claims" or other liabilities, [*id.* at ¶¶ 6, 10].

In his Reply, Mr. Jabali does not address Mr. Barakat's legal conclusions regarding the distinction between license cancellation and formal dissolution. *See generally* [Doc. 58]. While Mr. Jabali may have provided PRG Gulf with some measure of protection by paying or forgiving its outstanding debts, Mr. Jabali has provided no authority that would allow this Court to conclude that such practical protection is equivalent to the permanent legal protection from creditor claims that PRG would receive through formal dissolution of PRG Gulf. *See* [*id.*]. Nor is this Court persuaded that the Settlement Agreement's indemnity provision cited by Mr. Jabali somehow eliminates the material requirement that

8

PRG Gulf be formally dissolved with a formal certificate of dissolution of PRG Gulf. [*Id.* at 8 (citing [Doc. 42 at ¶ 3.1.3])]. If the indemnity agreement were read to provide such relief, such interpretation appears to render the provisions of the Settlement Agreement requiring formal, prompt dissolution through the execution of Dissolution Papers and other actions, [Doc. 42 at ¶¶ 1.5, 2.5, 3.1.2, 3.1.4, 3.1.6], superfluous—an outcome against which Colorado law counsels. *See Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009) ("We choose a construction of the contract that harmonizes provisions instead of rendering them superfluous.")

In sum, it appears that the formal dissolution of PRG Gulf was not some "trifling particular," but the object of the Parties' bargain in the first place. As Mr. Jabali stated in his first Motion to Reopen filed on July 20, 2017, "[t]he contingencies described in the settlement agreement involve obtaining the dissolution of a Kuwaiti business entity by the end of 2017." [Doc. 41 at ¶ 15 (citing [Doc. 42 at ¶ 2.5])]. The Court cannot conclude that, at the time of agreement, the parties regarded Mr. Jabali's obligation to obtain formal dissolution as non-material. Thus, the suspension of PRG Gulf's business license does not confer upon PRG the substantial benefit of its bargain, and Mr. Jabali has not substantially performed such that he is entitled to the Escrow Amount. This alone defeats the Motion, but the Court nevertheless proceeds to the question of whether the alleged running of Kuwait's limitations period for tax claims amounts to substantial performance of Mr. Jabali's obligation to obtain a tax clearance certificate for PRG Gulf.

### B. Tax Clearance Certificate

The other "deliverable" that the Settlement Agreement required Mr. Jabali to obtain was a "tax clearance certificate for PRG." [Doc. 42 at ¶ 3.1.6; Doc. 55 at 2]. Mr. Jabali

argues that "the passage of time and Kuwait's applicable five-year statute of limitations related to actions for collection of taxes provides the effect of a tax clearance document for PRG Gulf." [Doc. 50 at 15]. In support of this proposition, Mr. Jabali has submitted Article 441 of Kuwait's Civil Code, which provides that "a case claiming taxes and dues owing to the State shall not be heard by the lapse of five years; the said time limitation begins to run, in regard to taxes and annual rates, from the end of the year in respect of which they are due." [Doc. 50-22 at 3].

PRG, relying on Mr. Barakat's Declaration, argues that this is incorrect. [Doc. 55 at 13–14]. Mr. Barakat states that Article 441 has been superseded by Article 13(bis), which provides that the five-year limitations period does not begin to run until the company files a tax declaration or the "director" of an unspecified Kuwaiti governmental body "comes to know" that the company has not disclosed information relevant to its tax liability. *See* [Doc. 55-9 at ¶ 9]. Mr. Barakat also notes that the limitations period may be paused when the company receives a tax assessment in the mail, is requested to "settle" the relevant taxes, or obtains a "resolution of the tax appeal Committee." [*Id.*]. PRG therefore asserts that the running of Article 441's limitation period, to the extent it applies, does not provide the same protection as a tax clearance certificate. [Doc. 55 at 13–14].

The Court agrees with PRG that, even without resolving the issues as to Kuwaiti tax law, Mr. Jabali has not delivered to PRG the substantial benefit of its bargain. In his Reply, Mr. Jabali does not address any of Mr. Barakat's statements as to Kuwaiti tax law, nor does he dispute that Article 13(bis) may leave PRG open to tax liability. Mr. Jabali dismisses the argument that PRG may have outstanding tax liabilities as "purely speculative," and points to the indemnity provision. [Doc. 58 at 8]. It is true that PRG has

10

not identified any particular outstanding tax liability for itself or PRG Gulf, but that misses the point. The reason PRG contracted Mr. Jabali to secure a tax clearance certificate was to insulate itself from all risk of tax liability, speculative or not. *See* [Doc. 55 at 13]. The fact that PRG may remain open to tax liability in Kuwait—which Mr. Jabali does not dispute in his Reply—means that PRG has not received the substantial benefit of its bargain.

Mr. Jabali's citation to *Interbank Investments, L.L.C. v. Vail Valley Consolidated Water District* is unavailing. [Doc. 58 at 7 (citing 12 P.3d 1224)]. In that case, the missing "documentation" was secondary to the "essence of the agreements" to construct certain water distribution systems. *Interbank*, 12 P.3d at 1229. Here, the missing documentation was itself the essence of the agreement insofar as only the dissolution and tax clearance certificates could legally terminate PRG Gulf and protect PRG from liability. And unlike the party asserting substantial performance in *Interbank*, Mr. Jabali has not turned over "[m]ost of the documentation, or its equivalent" to PRG. *See id.* Instead, as he admits, Mr. Jabali simply waited for time to pass. [Doc. 50 at 14–15]. Accordingly, the Court concludes that Mr. Jabali has not substantially performed on his promise to obtain a tax clearance certificate for PRG.

## II. Excuse

Mr. Jabali asserts in his Reply that his failure to substantially perform under the Settlement Agreement can be justified by PRG's non-performance. [Doc. 58 at 9–10]. Mr. Jabali's argument is that, because PRG stopped cooperating with him beginning in April 2019, his breach of the Settlement Agreement should be excused. [*Id.*]. The Court agrees that "[a] party may establish justification for nonperformance under a contract if it

11

demonstrates that the other party to the contract caused its nonperformance." *Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 859 (Colo. App. 2007). However, Mr. Jabali only fully raises this argument in his Reply, and the Court considers it waived for purposes of the Motion. *See, e.g.*, *Bordertown, LLC v. AmGUARD Ins. Co.*, No. 22-cv-01683-REB-GPG, 2022 WL 17538186, at *1 (D. Colo. Oct. 5, 2022). Even if the argument were not waived, the Court would have equitable reservations about permitting Mr. Jabali to leverage a doctrine recognized as a shield to contractual liability, *see, e.g.*, *Hemman*, 176 P.3d at 859, as a sword to recover the full contract price—the Escrow Amount—despite his own defective performance, *see id.* ("One party's failure to perform under a contract precludes that party's demand for performance by the other party." (citation omitted)). Because Mr. Jabali has neither substantially performed on the Settlement Agreement nor offered a justification for his non-performance, the Motion to Enforce is respectfully **DENIED**.[3]

**III. Remedy**

Having decided that Mr. Jabali is not currently entitled to the Escrow Amount based on the record before it, the Court considers PRG's request that the Court disburse the Escrow Amount to PRG instead. *See* [Doc. 55 at 15]. The Court understands the Parties' mutual frustration that the Escrow Amount remains undisbursed in the court's Registry. But, as Mr. Jabali points out, PRG offers no support for its contention that it should receive the Escrow Amount to fund future efforts to dissolve PRG Gulf. [Doc. 58 at 10]. If PRG believes that it is entitled to the Escrow Amount under the Settlement Agreement, it should

---

[3] To the extent that the Settlement Agreement entitles PRG to attorneys' fees for prevailing on this Motion, PRG may request its fees in a separate motion. *See* [Doc. 42 at ¶ 4.12; Doc. 55 at 15].

12

have made that argument in its own motion to enforce. D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.")

The Court further observes that the Settlement Agreement does not include an express provision that would cause it to automatically terminate. Instead, the Settlement Agreement gives either party the "option" to void the Settlement Agreement and revive the underlying interpleader action if PRG Gulf was not dissolved by December 31, 2017. [Doc. 42 at ¶¶ 2.5, 3.1.1]. While the Settlement Agreement remains unfulfilled and the Parties' extended deadline of June 30, 2017 has long since passed, *see* [Doc. 55 at 7], neither party has moved to void the settlement. It is also not clear to the Court if, or how, any statute of limitations or the doctrine of laches might impact either Party's ability to bring a claim for breach of the Settlement Agreement given the lapse of time.

For now, the underlying interpleader action remains stayed. The Parties are directed to confer, file a Joint Status Report, and contact the Court no later than January 3, 2025 to schedule a Status Conference to determine how to proceed with this case.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant Jabali's Motion to Enforce Settlement Agreement and Disburse Funds from Court Registry [Doc. 50] is **DENIED**; and

(2) The Parties are **DIRECTED** to **MEET and CONFER**, **FILE** a Joint Status Report, and **CONTACT** the Court via email at Wang_Chambers@cod.uscourts.gov no later than **January 3, 2025** to schedule a Status Conference.

13

DATED:  December 3, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge